UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA NELSON, | ) |
| Plaintiff, | ) |
| | ) No. 16 C 11637 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| UNION PACIFIC RAILROAD COMPANY | ) |
| Defendant. | ) |

## OPINION AND ORDER

After Defendant Union Pacific Railroad Company ("Union Pacific") terminated Patricia Nelson's employment, Nelson brought this discrimination claim, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a). Union Pacific now moves for summary judgment on all claims. Because Nelson cannot show that she met Union Pacific's legitimate expectations or that Union Pacific treated similarly situated employees differently, and because, considering the evidence as a whole, a reasonable jury could not conclude that Nelson's termination was the result of her race, gender, or age, the Court grants summary judgment for Union Pacific.

## BACKGROUND[1]

Nelson, an African-American female over the age of forty, has worked for Union Pacific since 1998. She became an engineer sometime in the early 2000s. An engineer's responsibilities include running the train, ensuring the safety of the train, passengers, equipment, or commodities as well as knowing the territory.

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and the supporting exhibits. All facts are taken in the light most favorable to Nelson, the non-movant.

Union Pacific trained Nelson as an engineer and covered the rules contained in its General Code of Operating Rules. These include: Rule 6.28, which states that "trains must move at a speed that allows them to stop within half the range of vision short of a derail or switch lined improperly," Rule 7.1, which states "do not leave equipment standing where it will foul equipment on adjacent tracks or cause injury to employees riding on a side of a car or engine," and Rule 8.2, which states that "movement must not foul an adjacent track until the hand-operated switch is properly aligned." Doc. 52 ¶¶ 11, 13–14. Union Pacific categorizes these as critical, or cardinal, rules for the transportation department.

Following an incident on May 18, 2014, Union Pacific determined that Nelson had failed to comply with a number of rules and issued her a Level 4C discipline. Nelson waived a hearing and accepted the discipline. Two level 4 violations within a year triggers Union Pacific's upgrade discipline policy and will result in a Level 5 discipline and termination. At the time of the October 8, 2014, event, the Level 4C discipline was still on Nelson's record.

On October 8, 2014, Nelson was operating a train as the engineer from Proviso Yard to Butler Yard. As she approached Butler Yard, Nelson did her required job brief and informed the yardmaster, Daniel Eldridge, that she was getting close to the yard. Nelson and Matt Diaz, the conductor, a Hispanic male in his early twenties, were to come in on yard Track 1. Once at the yard, Reggie Piron, the utility man, a Caucasian male, joined the crew to help them set out the train on the three yard tracks so that the cars could be classified, switched out, or shuffled into other trains. As a conductor, Diaz's job duties included being on the ground lining up the track switches, and because Eldridge had instructed the crew that the switches were lined up and ready for them, Diaz left the engine to prepare to uncouple the strand of cars that was to be set in Track

2

1 while Nelson continued to move the train.  Piron, standing on the south end of Track 1, was not able to observe or change any switches.

As Nelson brought the train into the yard, she realized that the switch in front of her was lined for Track 2 instead of Track 1.  She reported it over the radio and engaged the brake, but she could not stop the train completely before it fouled Track 2.  Moments after the train came to a stop, Maurice King, the manager of operating practices, entered the yard.  King immediately pointed out to Joseph Eads, the manager of yard operations, that the train had violated a cardinal rule.  King took pictures of the incident and went to the train to debrief Nelson while Diaz lined the switch to correct the train's movements.  After his investigation, King piloted the train until it was in the clear so that he could relieve the crew members of their duties.  At the time of the incident, the train was the only movement in the yard so nothing could hit or sideswipe it.  Additionally, the train did not run through or damage the switch.

About a week after the incident, Manuel Magana, the director of operations support, sent Nelson a letter advising her that Union Pacific was conducting an investigation and hearing in connection with the charge that Nelson broke several Union Pacific operating rules on October 8, 2014.  According to the notice of investigation, the charges could result in the assessment of a Level 4 discipline, which in Nelson's case could be upgraded to a Level 5 because of her existing Level 4 discipline and end in permanent dismissal.  Following a hearing in late November, Union Pacific found Nelson in violation of Rules 6.28, 7.1, and 8.2, among other rules.  Neil Scott, the general superintendent of the Chicago service unit, determined that the evidence supported all of the charges against Nelson.  This rule violation required the assessment of a Level 4 discipline, which was upgraded to a Level 5 due to Nelson's existing Level 4 discipline.  As a result, Union Pacific terminated Nelson's employment.

Union Pacific did not charge Diaz because he was performing his routine job function at least a quarter or half a mile further back on the train and was not in a position to see the switch and know that it was not lined for movement. Similarly, Piron was not in a position to have seen whether the switches were properly aligned. Union Pacific only charged Nelson in this incident.

Nelson identified Eldridge, King, and Eads as the individuals who discriminated against her on October 8, 2014. Aside from an inconsequential question from King about when she would retire, Nelson denied that anyone said anything to her on October 8 that led her to believe that they were targeting her based on her age, race, or gender.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

To prove a claim for race and sex discrimination under Title VII and age discrimination under the ADEA, Nelson must demonstrate that the evidence, considered as a whole, would permit a reasonable fact finder to conclude that her race, gender, and age caused an adverse employment action. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see Carson v. Lake Cty.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claims). *Ortiz* does not preclude the *McDonnell Douglas* burden-shifting framework. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). To establish a *prima facie* case under the *McDonnell Douglas* framework, Nelson must show: (1) that she belongs to a protected class, (2) that her job performance met her employer's legitimate expectations, (3) that she suffered an adverse employment action, and (4) that another similarly situated individual who was not a member of a protected class was treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Orton-Bell v. State*, 759 F.3d 768, 777 (7th Cir. 2014). If Nelson establishes a *prima facie* case, the burden shifts to Union Pacific to articulate a legitimate, nondiscriminatory reason for Nelson's termination, which Nelson then may attack as pretext. *McDonnell Douglas Corp.*, 411 U.S. at 802. Union Pacific argues that Nelson cannot establish a *prima facie* case because her job performance did not meet her employer's legitimate expectations, and Union Pacific did not treat any other similarly situated individuals more favorably. The Court first considers the evidence through the *McDonnell Douglas* framework and then turns to a cumulative review of the evidence to determine whether a reasonable factfinder could determine that Nelson's race, gender, or age caused her termination. *See David v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

I.      *McDonnell Douglas*

First, Union Pacific argues that Nelson cannot establish a *prima facie* case because she did not meet its legitimate expectations. Nelson does not seriously argue that she did meet Union Pacific's legitimate expectations; she merely asserts that she did not contest the Level 4C discipline she received in relation to the May 18, 2014, incident, waiving her right to a hearing, and therefore did not admit, nor did Union Pacific have the chance to establish, that she had actually violated any rules with respect to that incident. This argument, alone, does not suffice to establish that Nelson met Union Pacific's legitimate expectations. *See Johnson v. Koppers, Inc.*, 726 F.3d 910, 916 (7th Cir. 2013) (finding that terminated employee who accepted discipline for insubordination that led to employee's termination was not meeting employer's legitimate expectations).

Instead, Nelson argues that she is not required to prove that she met Union Pacific's legitimate expectations because she claims Union Pacific treated her differently from Diaz and Piron, whom she claims similarly failed to meet Union Pacific's expectations. *Orton-Bell*, 759 F.3d at 777 (finding where an employee claims other employees similarly did not meet expectations but were disciplined differently, the legitimate expectations element and the similarly situated element merge together). "When uneven discipline is the basis for a claim of discrimination, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor, rather than job description and duties." *Coleman v. Donahoe*, 667 F.3d 835, 849 (7th Cir. 2012).

Nelson's argument runs afoul for one simple reason: the evidence does not demonstrate that anyone engaged in similar misconduct. In comparing Nelson to Diaz and Piron, no reasonable juror could find that the two potential comparators had the opportunity to see the

misaligned switch and stop the train in a manner compliant with Union Pacific's rules. The parties agree that Diaz was off the train, performing his routine job function at least a quarter or a half mile further back and "was not in a position to see the switch and know that it was not lined for movement." Doc. 52 ¶ 40. The parties also agree that "Piron was not operating the train and was not in a position to have seen or to know that [Nelson] was going to foul the adjacent track." *Id.* ¶ 41. And while Nelson testified that Eldridge said the switches were lined up "100 percent" for her and her crew, this does not absolve Nelson of her responsibility to pay attention to the switches and ensure the train does not foul an adjacent track. *Id.* ¶ 42. As the engineer, Nelson was responsible for the train's movement, and she was the only one in position to notice the misaligned switch. *Id.* ¶¶ 69, 39. Nelson's misconduct was a failure to notice and stop the train before it fouled an adjacent line. While Diaz may have improperly stepped off the train because he took Eldridge's assurance that the switches were correctly aligned, he did not have the same opportunity to see the switch, and therefore did not break the same rules as Nelson. Indeed, no one else had the opportunity to notice the misaligned switch, and therefore, no one else engaged in similar misconduct. *Coleman*, 667 F.3d at 850 ("In a disparate discipline case, the similarly-situated inquiry often hinges on whether co-workers 'engaged in comparable rule or policy violations' and received more lenient discipline." (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010))). Nelson's bare assertion that everyone in the crew should have been charged with a rule violation simply for being part of the crew does not save her. Nelson offers no evidence of any situation where Union Pacific held the entire crew responsible for similar conduct. The Court therefore finds that Union Pacific did not engage in disparate punishment; it punished Nelson because she was the lone crewmember with the

7

opportunity and responsibility to ensure that the train did not foul Track 2. This prevents Nelson from succeeding on her claims under *McDonnell Douglas*.

## II. Cumulative Assessment of the Evidence

"A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question of whether 'a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment action.]'" *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 665–66 (N.D. Ill. 2016) (alteration in original) (quoting *Ortiz*, 834 F.3d at 765). Instead it must also weigh whether Nelson's evidence would case "a reasonable factfinder to determine" that her race, gender, or age caused her termination. *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 686–87, 690–91 (N.D. Ill. 2017) (after addressing *McDonnell Douglas* test, cumulatively assessing "all the evidence" to determine if the plaintiff could prove a case of age and disability discrimination at trial). Nelson argues that Union Pacific's finding that she violated various rules on October 8, 2014, was pretextual because it did not apply those rules to the other members of the crew and there was no actual damage to the switch or impediment to any other equipment. *Santagelo v. Crown Cork & Seal USA, Inc.*, 255 F. Supp. 3d 791, 811 (N.D. Ill. 2017) (analyzing pretext in cumulative assessment of evidence). "[A]ssessing cumulatively all the record evidence without the assistance of the *McDonnell Douglas* paradigm," *David*, 846 F.3d at 227, a reasonable jury could not conclude that Union Pacific terminated Nelson because of her race, gender, or age.

As for Nelson's first argument, she does not offer any evidence to rebut the fact that she was the sole crew member in position to notice the misaligned switch. Though Rules 7.1 and 8.2 can apply to the whole crew, Nelson offers no evidence regarding why Union Pacific should

8

have applied them to Diaz or Piron in this case when they were not in a position to influence whether the train's movement violated the rules. Furthermore, King noticed the rule violation immediately upon arriving at the scene, and Scott, the general superintendent, determined the evidence supported the charges following Union Pacific's investigation. No reasonable juror could conclude from these facts that Union Pacific was lying to cover up some discriminatory intent, rather the evidence is clear that Union Pacific honestly believed Nelson, and Nelson alone, violated these rules. *Seymour-Reed v. Forest Pres. Dist. of DuPage Cty.*, 752 F. App'x. 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness. . . . [Plaintiff]'s evidence does not suggest that the [Defendant] used performance reasons to cover its discrimination").

As for the argument that Nelson did not cause any damage or impediment, the Court notes that it "do[es] not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* It would be relevant that Union Pacific does not require damage or injury to discipline employees when they violate cardinal rules if it did so selectively, but the Court has already found that Union Pacific did not engage in disparate discipline in this case. What matters here is Union Pacific's honest belief and there is no evidence that suggests that Union Pacific did not honestly believe its application of its disciplinary policies was appropriate even in the absence of damage or injury.

Considering the evidence as a whole, the Court finds that no reasonable juror could conclude that Nelson's race, gender, or age caused her termination. *Ortiz*, 834 F.3d at 765.

Rather, the evidence is clear that Union Pacific terminated Nelson's employment following her second Level 4 discipline in less than a year in accordance with its discipline policy.

## CONCLUSION

For the foregoing reasons, the Court grants Union Pacific's motion for summary judgment [51]. The Court enters judgment for Union Pacific on Nelson's complaint and terminates this case.

Dated: May 16, 2019

_____
SARA L. ELLIS
United States District Judge